UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


GLENN MATHIS                                    )
                                                )
V.                                              )           NO. 2:05-CV-149
                                                )                2:02-CR-86
                                                )
UNITED STATES OF AMERICA                        )


**<u>REPORT AND RECOMMENDATION</u>**

On November 20, 2002, Glenn Mathis was charged in a three-count indictment with (1) conspiring to possess methamphetamine with the intent to distribute it, (2) possession of methamphetamine with the intent to distribute it, and (3) possession of marijuana. He retained attorney Renfro Baird of Rogersville, Tennessee to represent him. After he was convicted, but before he was sentenced, he retained attorney Dee Hobbs of Chattanooga to represent him. For the sake of clarity, Mathis hereafter will be referred to as "defendant."

On June 6, 2003, defendant filed a motion to suppress all evidence regarding 200+ grams of methamphetamine that had been seized upon the execution of a state search warrant. After an evidentiary hearing, the magistrate judge filed a report and recommendation that recommended to the district judge that defendant's motion to suppress be denied. [R. 28]. Attorney Baird filed no objections to that report and recommendation. The district judge adopted and approved the report and recommendation, thus denying defendant's motion to suppress. [R. 30].

Defendant's trial commenced on July 22, 2003, and the jury returned its verdict of guilty on all three counts that same day. [R. 36]. Defendant was sentenced to one hundred ninety-nine months incarceration. [R. 52].

Defendant appealed to the Sixth Circuit Court of Appeals, asserting that (1) the district court erred by failing to grant his motion to suppress, (2) there was insufficient evidence to find that he possessed methamphetamine with the intent to distribute it, and (3) there was insufficient evidence to find him guilty of conspiring to distribute methamphetamine.

The Court of Appeals found the defendant had waived any appeal of the district judge's denial of his motion to suppress because he failed to file objections to the report and recommendation of the magistrate judge. It also found that there was "ample evidence" to support the jury's verdict of guilty on all three counts.[1]

Defendant subsequently filed a timely motion to vacate, etc., pursuant to 28 U.S.C. § 2255.[2] After being appointed to represent defendant, attorney Clifton Corker filed a supplemental pleading that expanded upon Mr. Mathis' original *pro se* petition.

The district judge has referred defendant's motion to the magistrate judge for a report and recommendation pursuant to the standing order of this Court and 28 U.S.C. § 636.[3]

Defendant presents the following issues in his § 2255 motion, as supplemented, each of which is an assertion that he was denied his Sixth Amendment right to counsel due to his

---

[1] *United States v. Glenn Mathis*, 122 Fed. Appx. 173, 2004 WL 3008782 (6th Cir. 2004).

[2] 2:02-CR-86, Doc. 64; 2:05-CV-149, Doc. 1.

[3] 2:02-CR-86, Doc. 65; 2:05-CV-149, Doc. 22.

lawyer's ineffectiveness:

(1) trial counsel failed to object to the magistrate judge's report and recommendation, thereby precluding further review of that issue;

(2) his attorney at sentencing failed to raise and preserve for appeal a claim that the sentencing guidelines are unconstitutional on the basis that the guidelines allowed the sentencing judge to enhance his sentence on the basis of facts not presented to or found by the jury;

(3) trial counsel was ineffective for failing to raise and preserve for appeal a challenge that defendant was denied notice that the government intended to enhance his sentence on the basis of a particular amount of methamphetamine ;

(4) counsel failed to object at trial and preserve for appellate review the issue of the "sufficiency of the evidence;"

(5) trial counsel failed to raise and litigate the issue regarding the validity of the consent to search defendant's house;

(6) counsel failed to investigate the facts and circumstances behind the FedEx package;

(7) trial counsel failed to call witnesses to explain the phone calls that defendant received soon after his arrest; and

(8) trial counsel should have objected to the officer's testimony regarding defendant's refusal to speak with the officer.

To obtain relief under § 2255, the defendant petitioner must prove (1) an error of constitutional magnitude, or (2) a sentence imposed outside the statutory limits, or (3) an

error of fact or law that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496 (6th Cir. 2003) cert. denied, 540 U.S. 1133 (2004); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) cert. denied, 540 U.S. 879 (2003).

Pursuant to Rule 4, Rules Governing § 2255 Proceedings, a motion to vacate may be summarily denied if it plainly appears from the face of the motion that the defendant-petitioner is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). In this case, there is no need to hold an evidentiary hearing, inasmuch as all the facts necessary to the court's decision are already in the record.

To establish ineffective assistance of counsel, the petitioner must show that his attorney's performance was deficient, and that the deficient performance prejudiced his defense to such an extent that the trial was unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). Both prongs of the test must be met, *Strickland, supra*, 466, U.S. at 697. Thus, to obtain relief under § 2255, the petitioner must show both (1) deficient performance, and (2) prejudice as a result of that deficient performance.

With respect to the fist prong, this court's scrutiny of defense counsel's performance is highly deferential, *Strickland*, 466 U.S. at 689. The reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The court must make an independent judicial evaluation of the attorney's performance, *Ward v. United*

*States*, 995 F.2d 1317, 1322, (6th Cir. 1993), and determine if counsel acted reasonably under all the circumstances. *Roe v. Flores-Ortega*, 528 U.S. 470-481 (2000).

In order to satisfy the "prejudice prong" of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The reviewing court must focus on whether the attorney's errors likely undermined the reliability of, and thus the confidence in, the result of the trial. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). In other words, as *Strickland* instructs, when judging a claim based on ineffective assistance of counsel, this court must decide if the attorney's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

With the foregoing criteria in mind, each of defendant's claims of ineffective assistance of counsel will be analyzed.

### (1) FAILURE TO OBJECT TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant asserts that he is actually innocent of the crimes for which he was convicted. He argues that he did not request a package to be sent to him; he did not know who sent the package to him; the United States did not know who sent the package to him; the address on the package did not contain his last name; the evidence that he was involved in a conspiracy was "flimsy and weak." It is beyond argument that the most damning

evidence against defendant was a FedEx package containing 223 grams of methamphetamine that was delivered to him on July 16, 2001 at his home in Church Hill, Tennessee. State law enforcement officers seized that FedEx package pursuant to a search warrant issued by Judge Jerry Beck of the Sullivan County Criminal Court. Without that evidence, the United States had no case. Not only would there have been no evidence of the 223 grams of methamphetamine mailed to him from California, there would have been no follow-up search of his house that resulted in the discovery of 5.08 grams of methamphetamine, 8.8 grams of marijuana, and various drug paraphernalia.

Defendant maintains that counsel's failure to object to the report and recommendation that recommended denial of his motion to suppress is analogous to a failure to file a notice of appeal and therefore is a *per se* violation of the of the Sixth Amendment that requires no showing of prejudice, citing *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). However, failing to file an objection to a report and recommendation is not analogous to failing to file a notice of appeal. In this regard, it is noted that even a complete failure to file a motion to suppress is not *per se* ineffective assistance of counsel that dispenses with the need to demonstrate actual prejudice. *See, Kimmelman v. Morresy*, 477 U.S. 365, 384 (1986). If a failure to file a motion to suppress does not *per se* constitute ineffective assistance of counsel, it is difficult to fathom how a failure to object to a report and recommendation could constitute *per se* ineffective assistance. Thus, defendant is bound to prove both prongs of the *Strickland* test, i.e., defective performance and prejudice.

To determine if the attorney's failure to object to the report and recommendation was deficient performance and, if it was, whether defendant was prejudiced thereby, it is necessary to

discuss the merits of the underlying motion to suppress.

As an initial matter, it is important to keep in mind that defendant's motion to suppress attacked Judge Beck's finding that there was probable cause to justify the issuance of the search warrant. A great deal of defendant's argument both now and at trial suggests that he is innocent and that he was "set up" by an enemy. To paraphrase his argument, he postulates that other drug dealers with whom he had an argument (the Conkins) wished him harm; that it very well could have been the Conkins who mailed, or procured the mailing of, the FedEx package to "Glenn" at defendant's address in Church Hill, Tennessee; that defendant remarked to the FedEx delivery person that he was not expecting a package; and he similarly protested to the officers when they arrived upon the scene that the package was not his.[4] That argument, of course, was for the jury to resolve. The motion to suppress, however, concerned the single issue of whether the affidavit stated sufficient probable cause to authorize Judge Beck to issue the search warrant for the FedEx package. Who sent the package, and why it was sent, were factual issues for the jury to determine, utterly irrelevant to the question of whether there was probable cause to believe the FedEx package contained illegal drugs.

The affidavit filed in support of the application for the search warrant recited:

> THE UNDERSIGNED, being duly sworn deposes and says: That he
> has reason to believe that a package described as follows:
> Federal Express (FedEx) package, bearing the tracking number
> 829362887972, addressed from Arturo Sanchez, San Jose, California
> to Glenn, 275 Creek Road, Church Hill, TN
> Said package being located in Sullivan County, Tennessee, now has
> certain property, namely, Methamphetamine, a Schedule II
> Controlled Substance.
> And the facts tending to establish the foregoing grounds for issuance

---

[4]Defendant presents this argument primarily in section 6 of his supplemental petition,
Doc. 8.

of a search warrant, as are follows:

\* \* \*

For about the past two years, Det. Brad Depew of the Hawkins County Sheriff's Department has been conducting an ongoing investigation into drug trafficking in the Church Hill area of the county. In the course of this investigation, a confidential informant has been utilized to gather information. This confidential informant has provided the following information; that Glenn Mathis lives at 275 Creek Road near Church Hill, TN, and described the house and garage. Further, that Mathis is from California, has prior convictions for drug offences, and described the vehicles that Mathis drives. Det. Depew has established all this information as true and correct through his investigation, surveillance, and personal knowledge.

This same confidential informant (CI) had stated to Det. Depew that Mathis receives packages of Methamphetamine from a man called Sanchez in San Jose, California. The CI said that this occurs regularly, and it is common for Mathis to have the package of drugs sent to his residence at 275 Creek Road, Church Hill, Tennessee, which is the residence that Det. Depew has confirmed through surveillance to be where Mathis lives.

Early this morning, Det. Depew was notified by FedEx that a package addressed to Glenn, 275 Creek Road, Church Hill, Tennessee had been sent through them from Arturo Sanchez, San Jose, California. Det. Depew went to the facility (located in Sullivan County), and had Deputy Chris Price, HCSD, utilize his canine Echo in a sniff of the exterior of the suspect package and four others. Deputy Price said that canine Echo "alerted" on the suspect package (which is the package to be searched) by biting, scratching, and pushing the package around the floor. Deputy Price said that this indicated the odor of narcotics is present.

A second trained narcotic detection dog, handled by Deputy Mark Baird of the Sullivan County Sheriff's Department was also utilized to conduct a sniff of the exterior of the same packages. Deputy Baird said his dog also "alerted" on the package suspected to contain narcotics, which would indicate the presence of narcotic odor. Deputy Baird has told your Affaint (sic) that his dog is trained to detect schedule drugs, including Methamphetamine, and has utilized this canine on numerous other occasions in which narcotics were located, and persons were convicted for drug related offences. Further, your Affaint (sic) has observed this dog being used to detect schedule drugs in the past, and has located drugs as a result of the dog's alert.

THEREFORE, Your Affiant would believe that probable cause exist to believe that the package described contains Methamphetamine.

After the preceding language, the following handwritten language appears, which was initialed by both the affiant and Judge Beck:

Det. Brad Depew has received information in the past from this confidential informant, and through Investigations he has found this information to be true and accurate. The informants information has led to other investigations which Det. Depew has substaniated (sic) the information the informant has given about Narcotics Dealing to be accurate and true.

In his motion to suppress, defendant advanced two arguments that the affidavit filed in support of the application for the search warrant failed to state probable cause. First, he claimed that the affiant, Special Agent Kinser of the Tennessee Bureau of Investigation, relied entirely upon information supplied to him by Detective Brad Depew of the Hawkins County Sheriffs Department, who in turn relied upon information supplied by a confidential informant. In other words, defendant argued that the affiant, Agent Kinser, had no first-hand knowledge of the reliability of the confidential informant, or the information he imparted, but rather relied upon hearsay statements made to him by Detective Depew. Secondly, defendant argued that the affidavit failed to recite any information regarding the reliability and proper training of the two drug dogs that alerted upon the FedEx package addressed to defendant.

The report and recommendation frankly did not directly address either of these issues, because defendant and his attorney took a different approach at the suppression hearing,

essentially converting it into a *Franks* hearing.[5]  Nevertheless, it was clear then, and is still

so, that the affidavit stated probable cause.

The fact that the affiant, Agent Kinser, relied upon hearsay information imparted to him by

Detective Depew regarding both the informant's reliability and the information passed on by the

informant does not preclude a finding of probable cause.  In *Rugendorf v. United States*, 376 U.S.

528 (1964), the defendant attacked a search warrant as invalid because the affidavit upon

which it was based contained hearsay from confidential informants passed on to the affiant

by other law enforcement agents.  376 U.S. at 529-531.  The Supreme Court held that a valid

probable cause determination requires only a substantial basis to find that evidence of a crime

was probably present in the place to be searched.  *Id.,* at 533.  *In United States v. Ventresca*,

380 U.S. 102 (1965), the court held that "[o]bservations of fellow officers of the Government

engaged in a common investigation are plainly a reliable basis for a warrant applied for by

one of their numbers."  *Id.* , 111.  Clearly, it was appropriate for Agent Kinser to rely upon

the opinion of Detective Depew regarding the reliability and veracity of the confidential

informant, as well as upon the accuracy of the information that the informant communicated

to Depew.  Similarly, it was appropriate for Agent Kinser to rely upon Depew's statements

that prior information from the informant had been verified by independent investigations.

Lastly, it was appropriate for Judge Beck to rely upon Kinser's affidavit regarding Depew's

knowledge of the informant and the information he imparted.  In other words, the multiple

layers of hearsay were of no significance.

---

[5]*Franks v. Delaware,* 438 U.S. 154 (1978).

As an aside, both the informant and his information were irrelevant to the question of probable cause to search the FedEx package. The informant had reported to Detective Depew that defendant regularly received packages of drugs mailed from California by a specific person, Sanchez. When a package addressed to defendant, showing that it had been mailed by Sanchez, arrived in Hawkins County, Agent Kinser and Detective Depew had a reasonable and articulable suspicion that the package contained drugs. Before applying for the search warrant, the package was presented to two drug detection dogs.

A package in the mail can be detained for a reasonable period of time and subjected to a sniff by a drug-detection dog if there is a reasonable and articulable suspicion that the package contains illegal drugs. *See, e.g., United States v. Elgin*, 2003 WL 245330 (6th Cir. 2003).[6] In *United States v. Caldwell*, 2000 WL 1277011 (6th Cir. 2000), drug enforcement agents and local law enforcement officers removed eight packages from a UPS conveyor belt as part of a routine drug interdiction effort. A drug dog was allowed to sniff the eight packages and he alerted on two of them. On the basis of the dog sniff, a search warrant was obtained for the two packages. When opened, it was discovered that one of the packages contained illegal drugs, and the other did not. The one containing illegal drugs was resealed and sent to its destination. The person who ultimately signed for the delivery was arrested and charged with attempted possession of cocaine with intent to distribute. The Court of Appeals held that pulling the package off the conveyor belt was not a "seizure,"[*4] and subjecting it to a dog sniff was not a search, [*4, 5]. The alert of the dog provided all the

_____

[6]Elgin was tried in the Eastern District of Tennessee.

probable cause that was required to obtain a warrant to open the package, [*6]. Thus, the information that had its genesis with the confidential informant was interesting background information, but it was unneeded in the probable cause analysis.

With respect to the affidavit's failure to mention anything about the reliability of the drug dogs, it should be noted that there is no requirement that an affidavit contain such information. "[T]he affidavit need not describe the particulars of the dog's training. Instead, the affidavit's accounting of the dog sniff indicating the presence of controlled substances and its reference to the dog's training in narcotics investigations was sufficient to establish the dog's training and reliability." *United States v. Berry*, 90 F.3d 148, 153 (6th Cir. 1996). *See also, United States v. Lehmann*, 1999 WL 644150 (6th Cir. 1999). The affidavit in this case stated that much and more.

Had defendant's trial counsel objected to the report and recommendation, there is no "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Indeed, it is virtually a certainty that the result would have been the same.

Counsel's failure to file an objection to the report and recommendation was not deficient performance. And even if it be assumed that it was deficient, there was no prejudice for the same reasons stated immediately above. The district judge would have reviewed the affidavit filed in support of the application for the search warrant and reached the same conclusion as did the magistrate judge.

**(2) HIS ATTORNEY AT SENTENCING FAILED TO RAISE AND PRESERVE FOR APPEAL A CLAIM THAT THE SENTENCING GUIDELINES ARE UNCONSTITUTIONAL ON THE BASIS THAT THE GUIDELINES ALLOWED THE SENTENCING JUDGE TO ENHANCE HIS SENTENCE ON THE BASIS OF FACTS NOT PRESENTED TO OR FOUND BY THE JURY**

**(3) TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE AND PRESERVE FOR APPEAL A CHALLENGE THAT DEFENDANT WAS DENIED NOTICE THAT THE GOVERNMENT INTENDED TO ENHANCE HIS SENTENCE ON THE BASIS OF A PARTICULAR AMOUNT OF METHAMPHETAMINE**

**(4) COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT AT TRIAL AND PRESERVE FOR APPELLATE REVIEW THE LACK OF A FINDING BY THE JURY REGARDING THE QUANTITY OF DRUGS**

The premise of each of these claims is that defendant's sentence was "enhanced" by the district judge on the basis of a finding by the judge (and not by the jury) regarding the quantity of drugs involved in Counts 1 and 2, and therefore violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

That premise is wrong. Defendant was convicted under 21 U.S.C. § 841(a)(1) and (b)(1)(C) for a quantity of methamphetamine of less than 5 grams. The statutory punishment upon conviction of § 841(b)(1)(c) is up to 20 years of incarceration, or up to 30 years if the defendant has a prior felony drug conviction. Inasmuch as defendant had a prior drug conviction, he faced a *statutory* sentencing range of 0-360 months. Where within that 360-month range he ultimately fell was determined by various factors within the Sentencing Guidelines, one of which was the quantity of drugs. *Apprendi* applies to the statutory range, not the Guideline range within a specific statutory range:

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within the statutory range. * * * For when a trial judge exercises his discretion to select a specific

13

> sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*United States v. Booker*, 543 U.S. 220, 233 (2005).

Defendant's guideline range within the 30-year statutory range was determined in part by the quantity of drugs involved in Counts 1 and 2. That quantity was properly determined by the district judge by a preponderance of the evidence and considered by him in deciding upon the appropriate sentence.

These three arguments advanced by defendant in his § 2255 motion would have been futile, if not frivolous, if made by defendant's trial or appellate attorney. A failure to file futile motions is not deficient performance, and obviously defendant could not be prejudiced by the failure to "preserve" what in reality was not a legitimate issue, *Strickland, supra*.[7]

## (5) TRIAL COUNSEL FAILED TO RAISE AND LITIGATE THE ISSUE REGARDING THE VALIDITY OF THE CONSENT TO SEARCH DEFENDANT'S HOUSE

To be sure, if there was no probable cause supporting the issuance of the search warrant to open the FedEx package, then the subsequent search of defendant's house, consensual or otherwise, legitimately could be attacked as a fruit of the poisonous tree. However, there was probable cause to support the issuance of the search warrant authorizing the opening of the FedEx package, and therefore there was no "poisonous tree."

Defendant testified at trial that he consented to the search of his house.[8] As noted earlier,

---

[7]"We reject the notion that it is defense counsel's duty to 'make every motion in the book' in the hope that one may succeed." *United States v. Hines*, 470 F.2d 225, 231 (3rd Cir. 1972), quoting from *Moore v. United Sates*, 432 F.2d 730, 736 (3rd Cir.1970).

[8]R. 40, TR. 97.

an attorney is not ineffective by declining to file a frivolous motion.

**(6) COUNSEL FAILED TO INVESTIGATE THE FACTS AND CIRCUMSTANCES BEHIND THE FEDEX PACKAGE AND PROVIDE THE JURY THE FACTS SUGGESTING DEFENDANT WAS "SET UP"**

**(7) TRIAL COUNSEL FAILED TO CALL WITNESSES TO EXPLAIN THE PHONE CALLS THAT DEFENDANT RECEIVED SOON AFTER HIS ARREST**

In July 2001, a confidential informant told Detective Brad Depew of the Hawkins County Sheriffs Department that a package containing drugs, addressed to "Glenn" at 275 Creek Road, Church Hill, Tennessee, would be arriving for delivery at the local Federal Express office.[9] Detective Depew thereupon contacted the Senior Manager of Operations at the FedEx facility and requested that he be told when such package arrived for delivery.[10] On July 16, 2001, the FedEx manager notified the Hawkins County Sheriffs Office that the package had arrived.[11] The package bore a label indicating that it was sent by Arturo Sanchez from San Jose, California.[12]

Detective Depew and a Sullivan County Canine Officer, and the officer's drug dog, went to the FedEx facility; the suspect package, including five to ten others, were placed on the floor and the drug dog was allowed to sniff them.[13] The drug dog alerted on the box

---

[9]R. 40, TR. 18; 27-28.

[10]R. 40, TR. 18.

[11]R. 40, TR. 14.

[12]R. 40, TR. 28-29, 44, 45.

[13]R. 40, TR. 14.

addressed to 275 Creek Road.[14]  Based on the drug dog's positive alert, Agent Kinser applied

for and received a search warrant from Judge Beck.[15]  After procuring the search warrant, the

package was opened and it was found to contain a powdered substance.[16]  A field test

indicated that the substance was methamphetamine.[17]

Agent Kinser of the TBI posed as a FedEx delivery man and he delivered the package

to 275 Creek Road, Church Hill, Tennessee.  In response to Kinser's knock on the door,

defendant answered.[18]  Before signing for the package, defendant told Kinser that he was not

expecting a package.[19]  Defendant accepted the package and was then arrested.[20]

Defendant consented for the officers to search his house.[21]  Approximately 15 minutes

after defendant and the officers entered defendant's house, the telephone rang several times.[22]

Defendant testified that he told the officers to answer his telephone, if they wished, but they

never did so.[23]

---

[14]R. 40, TR. 23.

[15]R. 40, TR. 29.

[16]R. 40, TR. 30.

[17]R. 40, TR. 30.

[18]R. 40, TR. 54-55.

[19]R. 40, TR. 55.

[20]*Id.*

[21]R. 40, TR. 56; 98.

[22]R. 40, TR. 56.

[23]R. 40, TR. 98-99.

Defendant testified at trial that he had been introduced in the Fall of 2000 to Kyle and Gail Conkin, and he periodically worked on several vehicles owned by the Conkins. In late December, the Conkins asked him if he wanted "a line,", i.e., a dose of methamphetamine, and he accepted their offer.[24] Thereafter, he began buying methamphetamine from the Conkins.[25] Defendant purchased methamphetamine from the Conkins in quarter ounce quantities, or about seven grams.[26] He used the scales in his house to insure that he wasn't being cheated on what he bought.[27] In early July 2001, so defendant testified, defendant's wife confronted him with a needle she had found in their bathroom, and he admitted that he was using methamphetamine.[28] His wife told him that she did not want the Conkins to come about their house any more, as a result of which defendant told the Conkins that he was no longer using methamphetamine, that he did not want the Conkins around him, and if they returned, he would do them violence.[29] It was a couple of weeks thereafter that the package from Sanchez arrived and defendant was arrested.[30] He testified that he did not know Sanchez, and was not expecting a package from anyone, which he told the FedEx

---

[24]R. 40, TR. 91.

[25]*Id.*

[26]This would be approximately 14 individual doses.

[27]*Id.*

[28]R. 40, TR. 93-94.

[29]R. 40, TR. 94.

[30]*Id.*

deliveryman, who of course was Agent Kinser.[31]

After defendant and the officer entered defendant's house, his telephone rang; the officers did not answer it, although defendant gave them permission to do so.[32]

Defendant undertook to explain the scales found in his house by saying that he used those scales to insure that he would not be cheated when he purchased drugs for his own use. He explained the baggies that were found by saying that he used them to store nuts and bolts.[33]

Defendant argues that he was "set up," and his attorney was obligated to explain the source of the methamphetamine. In this regard, defendant asserts that his attorney's performance was deficient due to his failure to investigate the involvement of the Conkins, who were notorious drug dealers and defendant's supplier of methamphetamine.

In this same vein, defendant also argues that counsel should have investigated any FedEx packages sent to Gail Conkin, as well as investigating who sent the package to defendant. He asks that he be allowed to engage in discovery with respect to this contention.

Stating that the United States argued throughout the trial that defendant regularly received packages from California, defendant suggests that the investigation of FedEx records would have revealed that no FedEx packages similar to the subject package had ever been sent to defendant's home. The trial transcript does not reveal that the United States

---

[31]R. 40, TR. 94, 95.

[32]R. 40, TR. 98.

[33]R. 40, TR. 100.

made such an argument during the trial. Thus, as far as the jury knew, this was the only such package ever received by defendant, and of course he told the jury that the package was not intended for him. The jury disbelieved defendant. Would the result likely have been any different if defendant had presented proof that he had received no other FedEx packages in the past? In a word, no. The United States presented no proof or argument that defendant had received other similar packages, so there was really nothing to refute in that regard except for the possibility that the jury might assume that he had received such packages in the past. Even so, evidence that he had received no recent packages from FedEx would not preclude the possibility that he had received packages shipped *via* United Parcel Service or by some other shipper.

Noting that the Assistant United States Attorney persistently argued that the phone calls described above were likely from individuals seeking to confirm the arrival and delivery of the methamphetamine, defendant argues that if his attorney had investigated the source of those phone calls, he would have been able to prove that each of the calls was innocent. It is noted that defendant's counsel pointedly argued to the jury that the United States likely knew who made the phone calls and intentionally did not present any evidence regarding the identity of the callers because it would not have been incriminating.[34] Counsel also argued to the jury that his client had been set up by the Conkins.[35] Counsel's "failure" to investigate the source of these phone calls, rather than being deficient performance, could just as easily

---

[34]R. 40, TR. 135.

[35]R. 40, TR. 138.

be characterized as sound strategy.  Counsel effectively suggested that *all* the calls were innocent simply because, if one or more were not, the United States surely would have presented some evidence in that regard.  Certainly, this magistrate judge cannot conclude that counsel acted unreasonably, *Roe v. Flores-Ortega*, 428 U.S. 470, 481 (2000) ("the relevant question is not whether counsel's choices were strategic, but whether they were reasonable").  Counsel's actions at trial must not be judged from the safe perspective of hindsight; rather, the court must analyze the reasonableness of counsel's performance within the context of the circumstances at the time of the allegedly deficient performance.  *Strickland*, 466 U.S. at 690.

Defendant's complaint that trial counsel should have investigated the source of the phone calls and the source of the FedEx package has as its premise that defendant was set up by the Conkins.  Without that premise, defendant's argument that his attorney should have made an investigation regarding the phone calls and the source of the FedEx package becomes even more flimsy.  Respectfully, the theory that defendant was set up by the Conkins was not a good one at trial, and it is not a good one here, although it is acknowledged that it is all that defendant had and has.  Defendant asked the jury to believe that the Conkins were so enraged at him merely because he told them that he would no longer purchase methamphetamine from them that they sacrificed $12,000 to $14,000 in methamphetamine merely to get him sent to prison.  Recalling that he testified that he had only purchased a thousand dollars' worth or so of methamphetamine from the Conkins,[36] that would have been an extremely expensive and imprudent vendetta.  Counsel made the most

---

[36]R. 40, TR. 91-92, 108.

of that theory that he could at trial. Nothing would have been gained had he proven that the Conkins themselves had received packages from FedEx. The defendant himself testified that the Conkins were drug dealers and that he had purchased methamphetamine from them in the past; of what use would be evidence that they received packages themselves?

Defendant asserts in his brief that after his arrest his wife received a message on her answering machine from Ms. Conkin which said, "How does it feel, Lori?", followed by laughter, and then a second message of "Where's Glenn, I wonder how he is feeling?", and then again laughter. Defendant complains that this was not brought out at trial. However, other than this bald assertion in defendant's supplemental pleading[37] there is no affidavit or other evidence that these messages were actually received by Ms. Mathis.

Again, there is a presumption that counsel's actions were well-considered trial strategy, *Darden v. Wainwright*, 477 U.S. 168 (1986), and this court cannot conclude that counsel's actions were unreasonable, *Roe v. Flores-Ortega, supra*.

Defendant has failed to demonstrate that there is a reasonable possibility that the outcome would have been different had counsel made an investigation regarding the phone calls and the Conkins as he now argues, *Strickland*, 46 U.S. at 694.

**(8) TRIAL COUNSEL SHOULD HAVE OBJECTED TO THE OFFICER'S TESTIMONY REGARDING DEFENDANT'S REFUSAL TO SPEAK WITH THE OFFICER**

While Special Agent Kinser of the TBI was on the witness stand, he was asked if he questioned Mr. Mathis. Kinser answered, "I was there when we did ask him if he'd like to speak

---

[37]Doc. 8, p. 8.

about it, and he refused. He said he didn't feel like talking to anybody about anything."[38]  In his supplemental motion[39] defendant argues that AUSA Smith improperly elicited this testimony and thereby violated his right to remain silent.[40]  Contrary to defendant's assertion, it was not AUSA Smith who asked the question; rather, it was defendant's attorney who asked the question. Thus, AUSA Smith did not elicit improper testimony or comment inappropriately on defendant's exercise of his constitutional right to remain silent.

The foregoing notwithstanding, it will be assumed that defendant also contends that his attorney was ineffective for failing to object to Kinser's response to his question and thereafter by failing to move that it be stricken. Again, both prongs of the *Strickland* test must be met.  Firstly, when the entire colloquy between defendant's attorney and Agent Kinser is read, the significance of this one response diminishes to a point of disappearing altogether. Attorney Baird's follow-up question to Agent Kinser clearly was intended to elicit from Kinser an acknowledgment that defendant freely told the officers of the quantity of methamphetamine he had in his house, an obvious attempt to persuade the jury that defendant was a user, not a dealer. Indeed, the very next question asks that question specifically: "And he also told Officer Depew that he was a user, didn't he?"[41]  For the most part, attorney Baird extracted from Kinser what he needed to, and the brief reference to defendant's statement that he did not "feel like talking to anybody about anything" is relatively inconsequential. Counsel could have objected and moved to strike, to be sure, but had he

---

[38]R. 40, TR. 59.

[39]Doc. 8, p. 13.

[40]Doc. 8, p. 14.

[41]R. 40, TR. 59.

done so it is quite likely that the jury would have paid far more attention to the response than they otherwise likely did.

For much the same reasons, it cannot be said that Agent Kinser's response, and attorney Baird's failure to object to that response, caused the defendant any prejudice; there is not a "reasonable probability" that the result of the proceeding would have been different, *Strickland, supra*. In the main, Kinser's answers to this short series of questions can only be considered as consistent with defendant's theory that he was a mere user.

**CONCLUSION**

In the opinion of this magistrate judge, defendant's attorneys were not ineffective, nor can it be said that there is a reasonable probability that the result of defendant's trial would have been different had the respective attorneys made the decisions or taken the actions which defendant now argues they should have taken. Therefore, it is respectfully recommended that defendant's motion to vacate his conviction and sentence under 28 U.S.C. § 2255 be denied.[42]

Respectfully submitted:

          s/ Dennis H. Inman          
United States Magistrate Judge

---

[42]Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).